# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FIDENCIO FLORES,<br><br>        Plaintiff,<br><br>    v.<br><br>BOUDREAUX, *et al.*,<br><br>        Defendants. | Case No. 1:24-cv-00888-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO PROSECUTE, FAILURE TO OBEY A COURT ORDER, AND FAILURE TO STATE A CLAIM<br><br>(ECF No. 6)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.**  **Background**

Plaintiff Juan Fidencio Flores ("Plaintiff") is a former county jail inmate proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On January 13, 2025, the Court screened the complaint and granted Plaintiff leave to file a first amended complaint or a notice of voluntary dismissal within thirty days. (ECF No. 6.) Plaintiff was warned that failure to comply with the Court's order would result in dismissal of this action, with prejudice, for failure to obey a court order and failure to state a claim. (*Id.* at 15.) The order was served on Plaintiff at his current address of record at Tulare County Pre-Trial Facility in Visalia, California. On January 22, 2025, the Court's order was returned as "Undeliverable, Not in Custody."

1

The deadline for Plaintiff to respond to the Court's order has now expired, and Plaintiff has not filed a notice of change of address or otherwise communicated with the Court.

## II.  Failure to State a Claim

### A.  Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B.  Plaintiff's Allegations

Plaintiff is currently housed at the Tulare County Pre-Trial Facility in Visalia, California where the events in the complaint are alleged to have occurred. Plaintiff names as defendants: (1) Mike Boudreaux, Sheriff, (2) Deputy Renteria, deputy, (3) Dr. Brar, doctor for Integrated Wellness Solutions, (4) Judge Antonio Reyes, Tulare County Superior Court.

///

In claim 1, Plaintiff alleges retaliation. Plaintiff filed a grievance due to being housed in a holding cell with a bed that did not meet A.D.A regulations. Plaintiff could not make a phone call because one has to stand to speak into the speaker. Plaintiff also asked for a bedside table so that he could place his food and write letters. Sgt Sandoval said that she would work on these issues. The next day, Plaintiff was moved out of the hospital unit to unit 2-S-109, an ADA cell and the deputy said there's your accommodations. There was a desk and phone in the day room.

Plaintiff is paralyzed with open sores requiring medical care. By moving Plaintiff, he got less treatment. He was told that he got his phone and desk. Plaintiff filed another grievance over the retaliation. Plaintiff's wound treatment was being done within the unit and deputy would lock down the entire unit causing other inmates to act upset. After this grievance was filed, FTO Deputy Rodriguez notified Plaintiff that Plaintiff would be moved right back to the OPH unit cell 152, which was the exact cell that Plaintiff was moved from. Moving Plaintiff from the medical environment was not the best place for Plaintiff's medical condition. In fact, Sgt. Berry said that medical was the best place for Plaintiff. Plaintiff requested a reasonable accommodation and they took away "another federally protected right." Plaintiff has since been relocated to OPH-15, a much smaller cell and given a bedside table and access to the phone. While in this cell, Plaintiff's left leg got caught between the bed and wall and either broke or fractured. Several custody staff said it's a medical issue and not custody problem. Sheriff Mike Boudreaux is responsible for Plaintiff as a prisoner in all manners.

Plaintiff alleges his pressure ulcers got infected, plus the injury to his leg has gone untreated.

In claim 2, Plaintiff alleges an American with Disability violations and threat to safety. On 6/12/24 and [unintelligible]/24, Plaintiff was transported to court by deputy Renteria in an illegal and demeaning manner. Plaintiff is paralyzed and Deputy Renteria instructed Plaintiff to drag and pull himself up the step of the rear entrance to the transport van and sit on the floor of the van. Plaintiff asked for a transport van. Deputy Renteria said that if Plaintiff does not get into this van, he will mark that Plaintiff refused to go to court. On 6/12/24 while inmate King pulled the neck of Plaintiff's shirt while Plaintiff was shackled, Plaintiff lost his balance and hit his head.

1   They pulled Plaintiff into a sitting position, while Deputy Renteria shut the rear door smashing
2   Plaintiff's left foot.  Plaintiff's foot began bleeding.  Plaintiff was left on the floor and transported
3   from Pre-trial to Visalia main jail.  Upon getting out of the van, Plaintiff's bloody foot touched
4   Deputy Johnsons stomach and left blood on it. No medical attention was given.  Once Plaintiff
5   was taken through the tunnel to the court building, deputy Nyguen hit Plaintiff foot into the door
6   to the holding cell between departments.  It left a blood streak across the bottom portion of the
7   door.  When Plaintiff confronted deputy Nyguen, he stated that he isn't the one with 4 DUIs.
8        On 6/13/24, Sgt Sandoval and Deputy Renteria came to his cell to take photos and Sgt.
9   Sandoval questioned Plaintiff about Plaintiff's grievance regarding the same deputy
10  photographing Plaintiff's injuries as well as causing them  When Plaintiff told Sgt. Sandoval that
11  my foot was smashed, Deputy Renteria stated he waited until Plaintiff's foot crossed the threshold
12  before closing the door. When Plaintiff removed his sock, his foot started bleeding again.
13  Plaintiff told Deputy Renteria "then why is my foot bleeding,"  He said that it was Plaintiff right
14  foot that got hit.  Plaintiff asked why he was transported on the floor, Deputy Renteria said that
15  Plaintiff was not transported on the floor, and that was not how he remembers how Plaintiff was
16  transported.  Plaintiff was transported on the bottom, not the floor. Plaintiff complained about
17  Deputy Renteria not telling the truth and used expletives and he was cautioned about his
18  language.  Plaintiff asked Sgt. Sandoval why she brought the victimizer to photograph and
19  question Plaintiff.  Sgt Sandoval said that the video would be reviewed and they both left.
20       Lt. C. Jones responded that Plaintiff's complaint had been reviewed and resolved.  He
21  further stated that we have taken steps necessary for corrective measure and this will not happen
22  again. If in the further any staff attempt to transport you in an improper way, ask to speak to the
23  on duty supervisor to assist you.
24       In claim 3, Plaintiff alleges that since his arrest on 5/22/24, Plaintiff has been denied
25  adequate medical care. Plaintiff takes medication for several years named Sertraline that stops
26  bladder spasms and allows Plaintiff to urinate.  Plaintiff was denied his medication which caused
27  Plaintiff to not be capable of passing urine through the catheter.  So the urine travels within his
28  body until it burns an exit and left Plaintiff sitting and sleeping in his own urine.  Plaintiff was

sent to the emergency room because the medical staff cannot legally treat his catheter because nobody holds the license to do so.  This issue became a problem again the last week of June which caused Plaintiff to go to the ER again. In July, Plaintiff was still sitting in his urine. Plaintiff was told that only way to get the medication was through mental health as an anti-depressant.  Plaintiff finally had no other option so Plaintiff told the psych doctor that Plaintiff is depressed and need Sertraline.  Three days later, Plaintiff is urinating properly. RN Jill told other nurses that Plaintiff tried attacking RN Ezequiel with part of his wheelchair which was a lie. Plaintiff reported that RN Ezequiel and Plaintiff had negative issues stemming from the streets. RN Jill said that the name is Enrique.  Medical staff turn their badges so nobody knows their names to file grievances. Due to the two lies from Enrique/Ezequiel, Plaintiff's wound treatment was ignored and the urine irritated his skin as well as wounds getting infected.

     Plaintiff alleges his urine issue caused infection to his kidneys and he got fever and chills. On 7/1/24, Dr. Brar changed the wound dressing from twice a day to every day, once a day and only on Monday, Wednesday and Friday.  Within a week, the wounds developed necrotic tissue. Plaintiff was running a fever, chills and night seats. Medical staff was taking his vitals but said nothing is wrong with Plaintiff.  Yet, Plaintiff was given a shot of antibiotic and pills.  On 7/12/24, Dr. Brar and RN Liz and several other performed a minor surgical procedure to remove 70% of the dead tissue from his wounds.  This procedure occurred in Plaintiff cell while he was awake because he was told you are paralyzed and you don't' even feel pain.

     Plaintiff's body registers pain differently. Plaintiff gets nauseated, temperature does up and gets dizzy then he passes out.  Plaintiff's cell has ants, spiders and it was never cleaned and sanitized before Plaintiff being housed in the cell.  Plaintiff believed without the procedure he would have died.  Another patient was transported to the hospital to have the exact procedure. On 6/29/24, RN Jill told Deputy Bolden to let Plaintiff know that she did not have time to change his dressing and treat his wounds. That was at 4:00 p.m.  Ten hours Plaintiff waited for his treatment, yet two hours before her shift ends, RN Jill knew that she would not have time for Plaintiff's treatment.  However, RN Jill  treated the patient in cell 152 and she treated others. She also had time to take personal phone calls and work on the computer.

5

Plaintiff reported these issues to Benjamin Mitchell of Integrated Wellness Solutions who stated that the records show that Plaintiff was seen each morning by the CNA for physical mobility and the RN checks 6-8 times a day. Plaintiff said that that was a lie because the CNA never came to his cell and neither did the RN. Benjamin showed Plaintiff an Amazon.com order for colostomy bags and RN Sarah later said she was to order the bags. Either way, Plaintiff has not received any colostomy supplies.

Plaintiff has dead tissue flesh and several infections. Plaintiff has a broken leg or foot. Plaintiff's mental health has been effected fighting for his life daily. Plaintiff has emotionally given up.

As remedies, Plaintiff asks that the pretrial facility be brought to ADA standard, purchase more wheelchair lifts and have a minimum of two per facility. Plaintiff asks that the deputies take certified courses regarding the A.D.A. and HIPPA. Plaintiff requests that the OPH unit be remodeled into an actual medical environment with ADA cells and purchase exam tables that lower so paralyzed individual have access and to create an ADA recreational area. Plaintiff requests that custody and medical staff, who violated his rights, be fired. Plaintiff seeks damages.

### C.    Discussion

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18, and 20 and fails to state a cognizable claim under 42 U.S.C. § 1983.

#### 1.    Federal Rule of Civil Procedure 8 and Linkage

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Here, Plaintiff's complaint is short, but it is not a plain statement of his claims showing that he is entitled to relief. Many of Plaintiff's allegations are conclusory do not state what happened, when it happened, or which defendant was involved. He fails to state the factual basis for the conclusions and what each defendant did or did not do which violated Plaintiff's rights. Plaintiff must provide factual allegations in support of his claims.

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Plaintiff fails to link each of the defendants to the alleged wrongful conduct. Plaintiff may not simply assert that a deprivation occurred and then accuse a group of defendants of being "responsible" for that deprivation.

### 2.     Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. The allegations are unclear if the claims are properly joined. For instance, Plaintiff not bring challenges to the various different medical treatments on different days by different people, and claims for ADA accommodations, housing assignments, retaliation, grievance processing, and other claims. These claims are not properly joined and must be brought in separate actions.

1  Merely because Plaintiff was housed at the Pre-trial facility when the incidents occurred does not
2  make every injury or incident related. Separate unrelated claims must be filed in separate
3  lawsuits.

### 3.     Supervisor Liability

Insofar as Plaintiff is attempting to sue Defendant Warden, Lieutenant, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Here, Plaintiff has failed to establish that Defendant Warden, Defendant Deputy Warden, or other supervisor, participated in or directed any constitutional violation or that he implemented

a policy so deficient that it was the moving force of any constitutional violation.

### 4. Due Process – Medical Care

Claims of inadequate medical care "brought by pretrial [or civil] detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Under this standard, plaintiff must allege facts from which to infer: (1) "[t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;" (2) "[t]hose conditions put the plaintiff at substantial risk of suffering serious harm;" (3) the defendant's conduct was objectively unreasonable . . . ; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries." *Id.* (citing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (citations omitted). Thus, to adequately plead objective deliberate indifference, plaintiff must plead facts from which to infer that a defendant acted with "something akin to reckless disregard" for his health. *Id.*

Plaintiff alleges numerous medical claims against multiple defendants including for wound treatment, for moving Plaintiff's housing, for breaking his leg and treatment, denial of medication, delay or lack of medical care, among other wrongs. As stated above, Plaintiff must not improperly join different medical claims. For each properly joined claim and each defendant, Plaintiff must allege sufficient factual support satisfying the elements of a claim for denial of medical care.

### 5. Due Process – Excessive Force

As Plaintiff was a pretrial detainee at the time of the incident, constitutional questions regarding the conditions and circumstances of Plaintiff's confinement are properly raised under the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 77 (1983); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). The due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Revere*,

463 U.S. at 244.  Thus, while the Eighth Amendment provides a minimum standard of care for detainees, plaintiff's rights while detained in custody are determined under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's protection against cruel and unusual punishment.  *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1197 (2001) (overruled on other grounds by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (2016)).

The Constitution does not prohibit the use of reasonable force by officers.  *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006).  Whether force used was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tatum*, 441 F.3d at 1095; *Lolli v. Cty. of Orange*, 351 F.3d 410, 415 (9th Cir. 2003).  The proper inquiry balances the nature and quality of the intrusion against the countervailing governmental interests at stake.  *Graham*, 490 U.S. at 396; *Lolli*, 351 F.3d at 415).  To state an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.  *Graham*, 490 U.S. at 396 (citations omitted).

Plaintiff may be able to state a claim against Defendant Renteria for slamming Plaintiff's foot in the door, but currently fails to do so.  Plaintiff fails to allege facts that the force purposely or knowingly used against him was objectively unreasonable. Further, claim is improperly joined with other claims.

     **6.**  **Americans with Disabilities Act ("ADA") and Rehabilitation Act**

The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a

10

1  disability who, with or without reasonable modifications to rules, policies, or practices, the
2  removal of architectural, communication, or transportation barriers, or the provision of auxiliary
3  aids and services, meets the essential eligibility requirements for the receipt of services or the
4  participation in programs or activities provided by a public entity." *Id.* § 12131(2).

5  To the extent Plaintiff intends to sue the individual named defendants for violation of his
6  rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State official
7  in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*,
8  288 F.3d 1145, 1156 (9th Cir. 2002).  The proper defendant in ADA actions is the public entity
9  responsible for the alleged discrimination.  *U.S. v. Georgia*, 546 U.S. 151, 153 (2006).  State
10 correctional facilities are "public entities" within the meaning of the ADA.  *See* 42 U.S.C.
11 § 12131(1)(A) & (B); *Pennsylvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998);
12 *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

13 In order to state a claim under the ADA, the plaintiff must have been "improperly
14 excluded from participation in, and denied the benefit of, a prison service, program, or activity on
15 the basis of his physical handicap." *Armstrong*, 124 F.3d at 1023. Plaintiff has alleged no facts
16 demonstrating such exclusion or denial.  Any claim for ADA violation is improperly joined.

17 To the extent Plaintiff intends to sue the individually named defendants for violation of
18 his rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State
19 official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v.*
20 *Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). The proper defendant in ADA actions is the public
21 entity responsible for the alleged discrimination. *U.S. v. Georgia*, 546 U.S. 151, 153 (2006).
22 State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C.
23 § 12131(1)(A) & (B); *Pennsylvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998);
24 *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

25 **7.     False Reports**

26 To the extent Plaintiff alleges that Defendants falsified chronos, disciplinary or medical
27 reports against Plaintiff, he cannot state a claim.
28 ///

11

The creation of false evidence, standing alone, is not actionable under § 1983. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted).

### 8. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff uses the word retaliation but Plaintiff fails to allege factual support for each of the elements of a claim for retaliation against any defendant. Further, this claim may not be improperly joined.

### 9. No Right to Appeals Process or to a Particular Investigation

To the extent Plaintiff is challenging how his grievances were handled, a prison official's processing of an inmate's appeals, without more, cannot serve as a basis for Section 1983 liability. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004); *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860); *Evans v. Cisneros*, No. 1:22-

12

CV-01238 AWI BAM PC, 2023 WL 2696670, at *5 (E.D. Cal. Mar. 29, 2023) (no claim for failing to address appeals).

To the degree Plaintiff is trying to hold the individuals or others liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Page v. Stanley*, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome"); *Ellis v. Cty. of Kern*, No. 1:22-CV-00436 ADA BAM PC, 2023 WL 7005188, at *5 (E.D. Cal. Oct. 24, 2023), report and recommendation adopted, No. 1:22-CV-00436 NODJ BAM PC, 2023 WL 8934370 (E.D. Cal. Dec. 27, 2023) (stating no claim existed for Defendants failure to investigate Plaintiff's appeal regarding alleged excessive force and sexual assault).

### 10.    **Judicial Immunity**

Plaintiff attempts to bring suit against Superior Court Judges Reyes.  However, judges "are absolutely immune from damages actions for judicial acts taken within the jurisdiction of their courts."  *See Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam). "Grave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity."  *Id.*  Rather, this immunity is lost only when the judge "acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature."  *Id.*  Judges retain their immunity even when they are accused of acting maliciously or corruptly, *see Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam); *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978), and when they are accused of acting in error, *see Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). Further, Plaintiff fails to link this defendant to any wrongful conduct.

///

///

### 11. Injunctive Relief

Plaintiff seeks to have defendants fired and seeks modification to facilities and other physical alterations. The requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Amer. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984). Plaintiff's request to fire Defendants is not narrowly drawn and is not the least intrusive means necessary to correct the harms alleged.

### III. Failure to Prosecute and Failure to Obey a Court Order

#### A. Legal Standard

Plaintiff is required to keep the Court apprised of his current address at all times. Local Rule 183(b) provides:

> **Address Changes.** A party appearing in propria persona shall keep the Court and opposing parties advised as to his or her current address. If mail directed to a plaintiff in propria persona by the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within thirty (30) days thereafter of a current address, the Court may dismiss the action without prejudice for failure to prosecute.

Federal Rule of Civil Procedure 41(b) also provides for dismissal of an action for failure to prosecute.[1]

---

[1] Courts may dismiss actions sua sponte under Rule 41(b) based on the plaintiff's failure to prosecute. *Hells Canyon Pres. Council v. U. S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) (citation omitted).

14

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

**B.     Discussion**

Here, Plaintiff's address change was due no later than February 24, 2025, and Plaintiff's response to the Court's January 13, 2025 order is also overdue. Plaintiff has failed to comply with the Court's order or otherwise communicate with the Court. The Court cannot effectively manage its docket if Plaintiff ceases litigating his case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes

progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's January 13, 2025 order expressly warned Plaintiff that his failure to comply with the Court's order would result in dismissal of this action, with prejudice. (ECF No. 6, p. 15.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case and updating his address. More importantly, given the Court's apparent inability to communicate with Plaintiff, there are no other reasonable alternatives available to address Plaintiff's failure to prosecute this action and his failure to apprise the Court of his current address. *In re PPA*, 460 F.3d at 1228–29; *Carey*, 856 F.2d at 1441.

**IV.  Order and Recommendation**

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a District Judge to this action.

Furthermore, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to obey a Court order, failure to prosecute, and for failure to state a claim.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." **Objections, if any, shall not exceed fifteen (15) pages or**

**include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 10, 2025**          /s/ *Barbara A. McAuliffe*
                                     UNITED STATES MAGISTRATE JUDGE